RICHARD PICK & HELLER COMPANY, Respondent, vs. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant.

*September 17—December 9, 1930.*

*Douglass Van Dyke* of Milwaukee, for the appellant.

For the respondent there was a brief by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

The following opinion was filed October 14, 1930:

FRITZ, J. On January 10, 1924, following negotiations for several months, plaintiff (then named the Richard Pick Manufacturing Company) and the International Supply

Company entered into an exclusive sales contract under which the plaintiff, a jobber and dealer at Chicago, agreed to purchase 500,000 sets of devices, known as "Kasterslides" and "Monopoints," during the first year, with the option of renewing such purchase annually for five years. At the time of the negotiations and the date of that contract, a patent infringement suit was pending between Henry W. Peabody & Company and the International Supply Company, in which the former charged that the Kasterslides and Monopoints were an infringement of the Peabody & Company's patents. Prior to January 10, 1924, the trial court had rendered judgment dismissing the complaint in that litigation, but Peabody & Company had taken an appeal. In the exclusive sales contract the plaintiff required the International Supply Company to agree to furnish to plaintiff, with each order of 500,000 sets, an indemnity bond with satisfactory sureties, in a form prepared by plaintiff's counsel and annexed to the exclusive sales contract.

In accordance with that agreement, and in connection with the orders for part of the first 500,000 sets, the International Supply Company, on January 10, 1924, delivered to plaintiff the bond upon which this action is brought, and which was in the form prepared by plaintiff's counsel, and was duly executed by the Fidelity and Deposit Company of Maryland as surety. The provisions of that bond were as follows:

"Know all men by these presents, That we, International Supply Co. Inc., a corporation duly organized under the laws of the state of Massachusetts and having a usual place of business in Boston, Massachusetts, as principal, and Fidelity and Deposit Company of Maryland, a corporation duly organized by law and having a usual place of business in Chicago in the state of Illinois, as surety, are holden and stand firmly bound and obligated unto Richard Pick Manufacturing Co., a corporation established by law and having

a usual place of business at 223 West Lake street, Chicago, Illinois, in the full and just sum of three thousand dollars ($3,000), to the payment of which to the said Richard Pick Manufacturing Co., its successors and assigns, we bind ourselves, our successors and assigns, jointly and severally, firmly by these presents.

"The condition of this obligation is such, that

"Whereas, the said Richard Pick Manufacturing Co. has entered into a contract for the purchase from said International Supply Co. Inc. of five hundred thousand sets of 'Kasterslides,' and

"Whereas, the said Richard Pick Manufacturing Co. has agreed to purchase the said 'Kasterslides' only in event of a bond being given by said International Supply Co. Inc., agreeing to indemnify and save harmless said Richard Pick Manufacturing Co.:

"Now, therefore, if the said International Supply Co. Inc. shall pay, indemnify, and save harmless the said Richard Pick Manufacturing Co., its stockholders, officers, and agents from any and all loss, costs, attorney fees, damages, and expense of any kind, they or either of them may at any time incur or be put to by reason of any claims, demands, suit or suits, brought within two years from the date hereof, whether baseless or not, made against them or either of them, that the said purchase by said Richard Pick Manufacturing Co. was an invasion of any right of any other person or corporation, or that such 'Kasterslides' so purchased was an infringement of any discovery, invention, or that such purchase by Richard Pick Manufacturing Co., or sale or sales by it of such articles, constitute unfair competition, or that any such sale or sales, or the use of the word 'Kasterslides' was an invasion of any right of any other person or persons or corporation, then this obligation to be void, otherwise to remain in full force and effect. The surety herein expressly waives any right to participate in or be subrogated to any other security that said Richard Pick Manufacturing Co. might at time receive or have for the foregoing obligation or any part thereof, and agrees that its liability herein shall not be in any wise affected by any release of any such other security."

Up to February 15, 1924, the plaintiff received several

deliveries of sets from the International Supply Company, but never took all of the first 500,000 sets. On March 2, 1924, the judgment dismissing the complaint in the infringement suit was affirmed. On April 16, 1924, Peabody & Company brought suit in the United States district court, in Massachusetts, against the International Supply Company, Samuel L. Sneierson, and Noah B. Levine (respectively president and secretary of the International Supply Company), for damages for alleged unfair competition and for an injunction restraining the manufacture, purchase, and sale of Kasterslides by the named defendants and their agents, attorneys, servants, and employees and all others acting by and under their direction or authority.

On April 28, 1928, a decree was entered in the unfair competition suit by consent of the parties thereto, which provided that because of the similarity in the design and appearance of Kasterslides to Peabody & Company's slides, the acts of the defendants in that suit, in making and selling their slides, constituted unfair competition in trade with Peabody & Company, and an invasion and violation of their rights; and which further provided that a permanent injunction issue enjoining the defendants, their agents, attorneys, servants, and employees, and all others acting by and under their direction or authority, from making or selling Kasterslides, or furniture slides similar thereto. However, the decree also provided ". . . that there shall be no accounting by the defendants for profits or damages arising out of the violation and invasion of plaintiffs' rights."

The injunction which was issued pursuant to and in accordance with that consent decree was addressed to only the International Supply Company, Samuel L. Sneierson, Noah B. Levine, and "your agents and servants."

During the month preceding the entry of that consent decree, contracts were made between the International Supply Company and Peabody & Company, in which, for substan-

tial consideration paid by the latter to the International Supply Company, it agreed to discontinue its business and transfer its assets to Peabody & Company and to consent to the decree. In those contracts Peabody & Company agreed—

" . . . that they will not bring suit or suits against the jobbers, dealers, or users of furniture slides of the parties of the second part to whom bonds or other guarantees or assurance were given by party of the second part."

In May, 1924, the International Supply Company, by correspondence, breached its contract with plaintiff for the delivery of further Kasterslides, and in consequence thereof became liable for the damages for such breach, which plaintiff seeks to recover in this action from the Fidelity and Deposit Company of Maryland by virtue of the indemnity bond.

The plaintiff in the case at bar was never made a party, and was never served with any process or notice, in either of the suits instituted by Peabody & Company. No suit was ever brought by Peabody & Company against the plaintiff herein, or its stockholders, officers, or agents, by reason of plaintiff's purchase or sale of Kasterslides. Until after the International Supply Company had thus breached its contract with the plaintiff, it had no communication whatever from or on behalf of Peabody & Company by reason of plaintiff's dealings in Kasterslides. After that breach occurred, Peabody & Company verbally informed plaintiff of the injunction in the unfair competition suit against the International Supply Company; that the plaintiff was selling slides in unfair competition; and that the International Supply Company and the plaintiff were prevented by the injunction from selling Kasterslides; but that Peabody & Company would permit plaintiff to sell the slides which it had on hand.

The learned circuit judge concluded that the indemnity of the bond included "loss, cost, damages, expenses, and attor-

ney fees arising from a breach of the said sales contract" by reason of the claims and actions of Peabody & Company, and, having found such damages, including an item of $300 for attorney's fees, to be in excess of $3,000, the court ordered judgment for the recovery of $3,000, with interest and costs.

The undertaking of the surety under the bond involved in this action was to save harmless the plaintiff, its stockholders, officers, and agents, from "all loss, costs, attorney fees, damages, and expense of any kind" which they may "incur or be put to by reason of any claims, demands, suit or suits, brought within two years from the date hereof, whether baseless or not, made against them or either of them;" that plaintiff's purchase, sale, or use of Kasterslides constituted unfair competition, patent infringement, or an invasion of any right of any person. Peabody & Company's suits for patent infringement and unfair competition were not brought against any of the obligees of the bond, and in those suits no claim or demand was made against those obligees. On the contrary, the consent decree expressly absolved even the defendants in the unfair competition suit from accounting for profits or damages arising out of the violation and invasion of plaintiff's rights. Likewise, Peabody & Company expressly agreed, in contracting for that consent decree, that they would not bring suit or suits against the jobbers, dealers, or users of furniture slides of the International Supply Company to whom the latter had given bonds. So far as this plaintiff is concerned, there has been no violation of that agreement by Peabody & Company claiming or demanding damages by reason of sales in the past; and Peabody & Company did permit plaintiff to sell the Kasterslides which it had on hand.

Consequently, up to the time of the breach of contract by the International Supply Company, as well as ever since, there has been no occasion whatsoever for the obligees of the

bond to incur or be put to any loss, cost, attorney fee, damage, or expense by reason of any suit or claim or demand made against them by any one within the terms of the bond. Plaintiff may have sustained loss or damage by reason of that breach of contract, but such loss or damage was not covered by the terms of the indemnity bond. On the other hand, the expense for legal services, valued at $300, which were performed for plaintiff when it consulted its attorney and had him make an investigation at the time of the commencement of either of the suits by Peabody & Company against the International Supply Company, was likewise not within the terms of the bond, because those suits were not brought against any of the obligees, and at those times and in those suits there was no claim or demand whatsoever made against any of the obligees of the bond, within the meaning or intent thereof.

For the reasons stated, plaintiff is not entitled to indemnity under the bond for the damages which it sustained by reason of the breach of the sales contract, or its expense for attorney's services performed under the circumstances hereinbefore stated. The trial court's conclusion and judgment to the contrary must be reversed.

*By the Court.*—Judgment reversed, with directions to enter judgment dismissing the complaint, with costs.

A motion for a rehearing was denied, with $25 costs, on December 9, 1930.